24-2985 Cosmo Mezzina v. Port Imperial Ferry Corp. When we just let everybody get settled, we have a lot of folks who are watching us. Let's let them get out and settle down. Okay, Mr. Buxbaum? Yes, thank you, Your Honor. Sir, I understand you would like to reserve two minutes. Is that right? Correct. Okay, whenever you're ready. Good morning, Your Honor. Counsel, may it please the Court, Andrew Buxbaum here on behalf of Cosmo Mezzina. The District Court dismissed a Siemens personal injury case on summary judgment grounds. We believe that there are at least six issues of material fact which argue in favor of reversal. And I'll try to do this in a temporal fashion. Number one is whether the captain should have tied up the starboard stern line when the vessel docked. He was asked at page 100 of his deposition whether Mr. Mezzina could have retrieved the line on the after deck when the vessel docked. And the captain responded, yes, if he threw it to me. This could have been accomplished when the vessel docked, before the hatch was removed, and before Mr. Mezzina was ordered to retrieve a stern line once the hatch was opened. So you're saying that the captain, I suppose, or the ferry line, was negligent because the captain didn't ask for the line to be thrown in advance? Exactly, Your Honor. How is that in any way, how is that a proximate cause of his injury? Well, if that were accomplished, Mr. Mezzina would not have had to get to the stern to retrieve a line with the hatch open. And we believe, had that been done previously when the vessel first docked, that this whole accident could have been avoided. Well, that may be a cause, but it doesn't strike me as a proximate cause. I mean, that seems to me as, you know, if he hadn't been asked to come to work that day, the accident would never have happened. Well, Your Honor, it's part of a series of events that have to be looked at in combination. If I can move on to the second material issue, which we believe is the failure to recover the hatch. What do you mean recover the hatch? Put the hatch cover back on, okay? The case law that we cited is clear. If there's nothing going on in the hatch, if there's no cargo being worked, if there are no workers in the hatch, the hatch should be recovered. And my friend says Judge hates dicta, a statement in Johnson is dicta. But a hatch should be recovered unless someone is working the hatch, unless cargo is being worked. Correct me if I'm wrong, but the hatch was open like six minutes before he fell in it? It's hard to tell because there's no video from inside. But based on the videos that were provided outside, that appears to be correct, Your Honor. I can't argue otherwise based on the videos. So your theory is that as soon as the hatch was open, they had an obligation to close it? No. The captain went down in the hatch. He came out of the hatch. He had no tools in the hatch. He left nothing in the hatch. He did his inspection in the hatch. Then he went outside to try to tie up the vessel. The case law says once- And how long after that did the accident occur? How long after the captain- Went up and started to tend to his other business? I believe it was approximately 33 seconds, Your Honor, based on the outdoor videos that we have. Approximately how long? 33 seconds. Once the captain walked to the string piece on the pier and got in position to retrieve the line that Mazina was attempting to throw, 1407 to 1440 is while he was standing on the string piece waiting for Mazina to throw the line. So he was out there for 33 seconds. Everyone was in the hatch for approximately six minutes. We don't know exactly what was going on, but I'll agree with the district court that the hatch was open for approximately six minutes. Why don't you give us a very quick- You said there were six issues of material fact. Why don't you quick, in bullet point fashion, give us all six and then we can-  So you've already said that the captain should have tied up the starboard line first when docking. The second thing you said is that the hatch cover- Presumably the captain should have been responsible for putting the hatch cover back on. You claim that there are four more things. What are those four more things? Whether the order given to Mr. Mazina to retrieve the line from the after deck was improvident and dangerous given that the hatch was open.  Next, whether the barriers were present. Mazina says they weren't present when he fell. Let's assume they were present. What was their position? There's three different versions of the position of the barriers. We have the L shape. That's in the record. That's what Mazina testified to, two sections of the barrier. We have what I'll call the C shape, three sections of the barrier- We have- Correct me if I'm wrong. We have different versions of Mazina's testimony about where the barriers were. One was given in the deposition and the other was given in response to the summary judgment motion. Well, I'm just talking about the setup of the barriers. He testified at deposition that they were set up in two sections. The captain said they were set up in three sections. And then the captain testified that when he saw Mazina in the hatch, they were in a straight line. So we believe that's an issue of fact of how the barriers were actually set up. There were three different versions of how the barriers- The point of the barriers was not to keep him from falling in, right? The point of the barriers was to alert him to the existence of the open hatch. He was aware of the existence of the open hatch. We don't dispute that. It was open and obvious. He helped open the hatch. He helped set up the barriers. So it's not an open- It is an open and obvious situation, which we contend merely eliminates the duty to warn, okay? They satisfied their- the vessel owner satisfied its duty to warn. But that does not remove the ship owner's obligation to make the area safe. And based on these material issues of fact, there's an issue- Can you just get to five and six? You said number four is whether the barriers were present when he fell and in what position. What are five and six? Quick bullet form. Whether he should have taken an alternate route. Vessel owner claims he should have gone up the bow stairs to the upper deck, across the upper deck, down the stern stairs to the rear deck. Okay, and number six? Number six is whether he had sufficient room on the main deck in the customary route to reach the after deck to retrieve the stern starboard line. All right, so now I'm going to ask you- This is a- we're not an ancient court of admiralty. That's why we have tridents and shells and dolphins on the ceiling. Tell us how this case differs from our decision. I know it's going back a long time, 1949, to the Sultana. Okay. Because it seemed awfully similar there. My understanding is that there was an open and obvious hatch that was plainly visible in daylight that the crew had finished unloading grain about an hour earlier, and somebody came on, one of the seamen came on the ship and stumbled and fell into the hatch, and we said, given those circumstances, no negligence. So tell us how that's different. I don't believe Sultana was a seaman's case. But looking beyond that, my understanding of the reading of Sultana- Well, he was an experienced seaman, the plaintiff. Was he? Okay. But I understand that the hatch was still being worked by- No, it had been done. They had been finished for an hour, and they were on to a different hatch. They were emptying grain, and there were various hatches. They had opened this one. They had unloaded all the grain, and it was just sitting there. They had finished about an hour earlier with that hatch, and it was open and obvious. It was daylight, and we said it was plainly visible. So I guess I'm asking you how that seems to me. When I read it, even though it's an old one, sometimes if you can have oldies but goodies, it seemed to map very cleanly on our present case. How does it not? In that case, it was foreseeable that the seaman would walk in the area of that hatch. I don't have the case handy, Your Honor. Okay. But the cases that the district court relied on, Davila and Washington, both involved seaman. In Davila, the seaman were removing lumber from the area under the hatch. In Valentine, the hatch lid was kept ajar so that the line from the hold could be passed through. So those are cases where the hold, the hatch over the hold needed to be kept open because the hatch was being worked. Here, there was no reason for the hatch to be opened. Well, as was the case in Sultana. You've reserved two minutes for rebuttal. Why don't we hear from counsel for the appellee, Mr. O'Donnell. Good morning, Your Honors. Kevin O'Donnell on behalf of the appellee, Port Imperial Ferry Terminal, doing business as New York Waterway. Appellee asks that this court affirm in its entirety the district court's decision below. Now, counsel just raised one issue that wasn't discussed below, and that concerns whether the captain should have tied up the starboard line when the vessel first docked at the work dock. Again, I don't believe that was raised below. And there was certainly no testimony, expert, or otherwise customer practice or anything to that effect addressing that issue. I believe all of the other issues that counsel addressed are adequately addressed in our briefs. So unless the court has any specific questions of me, I will rest on our briefs. That's fine. Thank you very much. Mr. Buxbaum, is there anything you would like to respond to in your remaining two minutes? Yes, Your Honor. I've located the Sultana case.  I had it listed under another caption. In Sultana, it was a prospective ship employee. That case was tried pursuant to the Great Lakes Act. My understanding is he was not a seaman and that grain elevator employees were still in the hold. So how does that ñ what is the different standard, legal standard, that applies under the Great Lakes Act that makes it different from here? I'm not familiar with that, Your Honor. So that was my question is why is it that being under the Great Lakes Act is different from here? It's only a good observation for you if there's a different standard of negligence under the Great Lakes Act. Let's assume there is no difference, Your Honor. Okay. Assume there's no difference. In that case, my reading of it was that there were grain elevator employees still in the hold. So there was a reason for the hold. But I thought they were in the hold using a different hatch. That's not my understanding. Okay. I could be misunderstanding. Okay. So you're saying that if somebody's in the hold, you don't have to seal them up. Right. But if no one's in the hold, as was in this case, with the captain stating that he was just told to hang out, wait for the port captain to come. So nothing was going on in the lazarette hold. And it should have been recovered when Mr. Messina was ordered to retrieve the line from the aft deck. Okay. Thank you, Your Honors. Thank you very much. Thank you to both of you. We will take the case under advisement.